TRINIDAD PIZARRO BENÍTEZ, PRESIDENTE DE LA ASAMBLEA MUNICIPAL DE VIEQUES ET AL., demandantes y peticionarios, *v.* RADAMÉS TIRADO GUEVARA, ALCALDE DE VIEQUES, demandado y recurrido.

*Número:* O-79-22      *Resuelto:* 22 de mayo de 1979

*Guillermo Mojica Maldonado* y *Héctor Luis Acevedo,* abogados de los recurrentes; *Luz C. Cruz Vázquez,* abogada del recurrido.

### SENTENCIA

Conforme surge del expediente de este caso se trata del incumplimiento por el Alcalde de una ordenanza municipal[1] aprobada por la Asamblea Municipal de dicho municipio por sobre el veto del Alcalde, por virtud de cuya ordenanza se estableció como lugar oficial de reuniones de la Asamblea el mismo local del municipio que tradicionalmente se utilizaba

---

[1] Ordenanza Municipal Núm. 8, Serie 1977–78.

para ello.(²) El Alcalde, por su parte, alega que ha provisto un lugar adecuado para las reuniones de la Asamblea distinto al designado por ésta con el fin de garantizar la seguridad de la propiedad pública de la Casa Alcaldía.

Los miembros de la Asamblea recurrieron al Tribunal Superior, Sala de Humacao, mediante recurso de *mandamus* en el que solicitan se obligue al Alcalde a cumplir con la ordenanza en cuestión. El tribunal de instancia declaró el recurso sin lugar, sin celebración de vista, dictaminando que no procede la expedición del auto de *mandamus* por exisitir un remedio adecuado y eficaz en el curso ordinario de la ley, cual es el procedimiento que establece la Ley Municipal, Art. 107, según enmendado, 21 L.P.R.A. sec. 1741, por lo cual los demandantes debían someter su caso ante la Comisión para Ventilar Querellas Municipales.(³)

Concedimos al Alcalde un término para que mostrara causa por la que no debíamos revocar la orden recurrida. Éste no ha comparecido.

La disposición que sirve de fundamento al tribunal sentenciador para desestimar la acción no es de aplicación a los hechos de este caso. Dispone que "[c]uando en algún municipio exista un estado de fricción entre la Asamblea Municipal y el Alcalde, a extremo tal que el crédito municipal o los asuntos públicos municipales sufran graves demoras o perjuicios, o corran el riesgo de sufrirlos, el Alcalde o la Asamblea deberán rendir un informe sobre tal circunstancia al

---

(²)La Ley Municipal dispone que las reuniones de la Asamblea serán públicas y se celebrarán en la Casa Alcaldía. Art. 14, según enmendado, 21 L.P.R.A. sec. 1156.

(³)Aunque el tribunal de instancia refirió a los demandantes a la Comisión para Ventilar Querellas Municipales, el procedimiento de ley exige que la Asamblea rinda un informe sobre el conflicto habido al Gobernador, quien es el funcionario que habrá de dar traslado del asunto a la mencionada Comisión. Adviértase que en *In re Ramírez* v. *Gobernador,* 44 D.P.R. 329, 331 (1932), requerimos un acuerdo oficial de la Asamblea para iniciar el procedimiento administrativo entonces vigente sobre conflictos entre el Alcalde y la Asamblea Municipal.

Gobernador, quien deberá ordenar a todos los jefes de departamentos que inmediatamente pongan a disposición de la Comisión para Ventilar Querellas Municipales toda la documentación e información que tengan relativa a los asuntos públicos de dicho municipio. Inmediatamente que reciba el informe antes referido el Gobernador dará traslado del mismo a la referida Comisión." Art. 107, según enmendado, 21 L.P.R.A. sec. 1741.

Es claro que este procedimiento se aplica cuando existe entre el cuerpo legislativo municipal y el ejecutivo discrepancias profundas que entorpezcan e impidan el funcionamiento normal de los asuntos municipales. Esta no es la situación en el presente caso. Lo que ha ocurrido es que el Alcalde no permite que la Asamblea se reúna en el salón donde habitualmente lo ha hecho, y que, como hemos señalado, ha sido designado para tal fin por ordenanza cuya validez no se impugna. Ni el crédito municipal ni los asuntos públicos municipales están amenazados.

Procede por tanto revocar la sentencia recurrida y devolver el caso al tribunal de instancia para la continuación de los procedimientos.

Así lo pronuncia y manda el Tribunal y certifica el Señor Secretario. El Juez Asociado Señor Rigau disiente con opinión, a la cual se une el Juez Asociado Señor Díaz Cruz. El Juez Presidente Señor Trías Monge no intervino.

(Fdo.) Ernesto L. Chiesa

*Secretario*

—O—

Opinión disidente del Juez Asociado Señor Rigau a la cual se une el Juez Asociado Señor Díaz Cruz.

San Juan, Puerto Rico, a 22 de mayo de 1979

A pesar del relativamente pequeño escenario físico en que se desenvuelve este caso, el mismo plantea un problema fun-

damental de nuestro sistema de gobierno democrático, representativo y constitucional. (¹)

Surge de los autos que por motivo de una controversia política, el Alcalde de Vieques desalojó de su habitual salón de reunión en la Casa Alcaldía a la Asamblea Municipal de dicho municipio. La Asamblea, órgano legislativo del municipio, para hacer valer sus derechos de reunión, aprobó, por sobre el veto del Alcalde y con el voto de más de dos terceras partes del total de sus miembros, la Ordenanza Núm. 8 de 4 de abril de 1978, mediante la cual designó formalmente el salón de reuniones que venía utilizando la Asamblea como su Salón de Sesiones oficial. A pesar de lo anterior, el Alcalde se ha negado a permitir que la Asamblea utilice dicho salón para sus reuniones.

El Presidente de la Asamblea Municipal y los demás miembros de dicha Asamblea presentaron en el Tribunal Superior, Sala de Humacao, una petición de *mandamus* exponiendo los hechos y solicitando del tribunal que ordenase al Alcalde demandado a cumplir o a dejar que se cumpla con la referida Ordenanza Municipal Núm. 8 de 4 de abril de 1978.

En 19 de diciembre de 1978 la ilustrada sala sentenciadora declaró no haber lugar al recurso. Entendió que los demandantes debieron utilizar el procedimiento comprendido en el Art. 107 de la Ley Municipal, Ley Núm. 142 de 21 de julio de 1960, 21 L.P.R.A. sec. 1741. Dicho artículo, según enmendado, dispone que cuando en algún municipio exista un estado de fricción entre la Asamblea Municipal y el Alcalde, el Alcalde o la asamblea rendirá un informe al Gobernador, quien ordenará a los jefes de departamentos que pongan a

---

(¹) Esto no es de extrañar. Con frecuencia casos que prima facie parecen de modesto impacto llevan dentro de sí planteamientos y consecuencias de importancia. Por ejemplo, y salvando las distancias, un mero nombramiento de un Juez de Paz que no se entregó al interesado, produjo una opinión que es generalmente considerada como la opinión más importante del derecho constitucional estadounidense: *Marbury* v. *Madison,* 1 Cranch 137 (1803).

disposición de la Comisión para Ventilar Querellas Municipales la documentación que tengan relativa a los asuntos públicos de dicho municipio.

Sigue disponiendo dicho artículo que practicada la investigación y celebrada una vista, la mencionada Comisión emitirá su fallo y podrá declarar vacante el cargo de Alcalde o los cargos de asambleístas que estime pertinente, etc. La resolución que dicte la Comisión será revisable ante el Tribunal Supremo del país.

Obviamente dicho procedimiento—complicado, lento y político—fue diseñado para otras clases de "fricciones" y no para un caso como el de autos, en que se da no unas meras fricciones o discrepancias de criterios sino en el que ocurre la ingerencia física y jurídica del ejecutivo municipal con la rama legislativa del municipio, creándose así un serio problema constitucional. No se trata de destituir al Alcalde ni a ningún asambleísta, ni de sustituirlos mediante su nombramiento por un funcionario ejecutivo. Se trata de lo siguiente.

La Constitución de Puerto Rico provee para un Gobierno de forma republicana, compuesto por tres Poderes, a saber, el Poder Legislativo, el Ejecutivo y el Judicial. Art. I, Sec. 2, Constitución de Puerto Rico.

Dichos poderes son jurídica y formalmente independientes entre sí y forman el sistema de pesos y contrapesos que tiene por objeto proteger la libertad de los ciudadanos y hacer difícil el establecimiento de un gobierno autocrático unipersonal. En cuanto a estos principios básicos del sistema democrático constitucional nuestra Constitución se nutre, en gran medida, del derecho histórico sobre estas materias e incluye lo mejor del pensamiento y de la tradición constitucional occidental. *Aponte Martínez* v. *Lugo*, 100 D.P.R. 282, 291 (1971).(²) Como se dijo en *Monaco* v. *Mississippi*, 292 U.S.

---

(²)Véase la Introducción del Profesor Edward S. Corwin a la *Constitution of the United States of America,* Revised and Annotated (1972), a la pág. XXII; del mismo autor, *The Higher Law Background of American*

313, 323 (1934): "La doctrina de la separación de poderes es fundamental para nuestro sistema. . . . Sus postulados limitan y controlan."

También se ha dicho sobre el particular que la separación de poderes no es meramente un asunto de conveniencia o de mero mecanismo, sino que su propósito es básico y vital: prohibir o evitar que todos los poderes del gobierno sean acaparados por unas mismas manos. *O'Donoghue* v. *United States*, 289 U.S. 516 (1933). Véase *The Federalist*, Núm. 9 (Hamilton); Núm. 47 (Madison); Núms. 66, 71 y 78 (Hamilton).

Nuestros gobiernos municipales, con sus ejecutivos y sus órganos legislativos separados e independientes constituyen, en parte, microcosmos del gran diseño establecido en la Constitución. La Ley Municipal dispone en su Art. 7, 21 L.P.R.A. sec. 1107, que los municipios tendrán "plenas facultades legislativas" en todo asunto que fuere de naturaleza municipal. Y en su Art. 9, 21 L.P.R.A. sec. 1151, expresa que: "Las facultades legislativas que por este Subtítulo se conceden a cada uno de los municipios de Puerto Rico, serán ejercitadas por el organismo de gobierno que se denominará oficialmente 'asamblea municipal'."

La Ley contiene una serie de ejemplos de facultades que la misma confiere a las asambleas municipales, pero no es necesario relacionarlas aquí. Baste con señalar que su ámbito incluye todo lo que es propiamente de materia legislativa. Como un sine qua non de las necesidades y facultades de un organismo plural legislativo es reunirse para deliberar y para tomar decisiones, surge de manera necesaria e inescapable que dicho organismo tiene la elemental facultad de decidir dónde y cúando se va a reunir. De lo contrario sus otras fa-

---

*Constitutional Law*, Cornell Paperbacks, (1965); Pound, *The Development of Constitutional Guarantees of Liberty* (1957); McIlwain, *Constitutionalism, Ancient and Modern*, (1940); Sabine, *A History of Political Theory*, (1945) y Antieau, *Modern Constitutional Law*, (1969) Tomo 2, pág. 200 y ss.

cultades quedarían anuladas. La intervención de un funcionario ejecutivo en las legítimas funciones legislativas de la Asamblea Municipal y la obstrucción o tentativa de obstrucción de sus funciones plantea de inmediato un problema y un conflicto de tangencias constitucionales (3) que va más allá de la mera fricción que contempla el citado Art. 107 y justifica la utilización del recurso de *mandamus* y el ejercicio de nuestra jurisdicción en el asunto. Lo mismo podría decirse si cualquiera de los otros poderes interfiriesen impropiamente con cualquiera de los otros dos. Ante una situación como la del caso de autos este Tribunal puede y debe ejercer su función señera de señalar la pauta constitucional correcta.

*Robledo, Alcalde* v. *C.V.Q.M.*, 95 D.P.R. 1 (1967), es distinguible del caso de autos. Allí se inició un procedimiento bajo el Art. 37 de la Ley Municipal de 1960 para destituir al alcalde por alegada conducta inmoral. El Tribunal se dividió. La mayoría sostuvo que no se trataba de conducta inmoral sino que "probablemente" lo que existía era "un estado de fricción entre el alcalde y algunos de los miembros de la asamblea municipal." Añadió la mayoría en su opinión, que "[s]ólo resolvemos que la conducta, que se estimó probada no constituye como *cuestión de derecho* la 'conducta inmoral o actuaciones ilegales que impliquen abandono, negligencia inexcusable o conducta lesiva a los mejores intereses públicos, en el desempeño de sus funciones' que como causa de destitución estatuyó el legislador." Se ordenó el archivo del cargo imputado al alcalde. La disidencia (Jueces Santana Becerra y Hernández Matos) opinó que se justificaba la destitución del alcalde por conducta inmoral, bajo el citado Art. 37.

En el caso de autos no se plantea una cuestión de conducta inmoral, en el sentido usual de la palabra, sino que,

---

(3) El Art. 29 de la Ley Municipal, 21 L.P.R.A. sec. 1171, extiende a la Asamblea Municipal las limitaciones impuestas por la Constitución y la Ley de Relaciones Federales a la Asamblea Legislativa.

como hemos señalado, la situación comprende un conflicto jurídico y constitucional que hay que resolver en ese plano.

Yo revocaría la orden recurrida, expidiría el auto y dictaría un interdicto prohibiéndole al demandado intervenir con u obstaculizar las reuniones de la Asamblea Municipal de Vieques, bajo apercibimiento de desacato. Regla 70 de las de Procedimiento Civil.